Good morning, Your Honors. May it please the Court to restate counsel for the appellant, Mr. Greenway, with me as Robin Conrad, lead counsel. I would like to start my argument today by briefly addressing Mr. Greenway's Tenard issue. I would then like to move on to the judicial bias claim followed by IACF counsel claims. Could you give me that line up again? Your voice sort of trailed down because you were reading. I'm sorry, Your Honor. Yes, I would like to first address the Tenard issue and then move on to judicial bias. And then I'll address the ineffective assistance of counsel claims. In his federal habeas petition, Mr. Greenway alleged that the state courts failed to consider and give effect to mitigating evidence of his IQ of 72 and the fact that his emotional maturity was that of a 9 to 12-year-old, despite the fact that he was 19 at the time of the crime. The district court rejected this claim on the merits and found that Greenway was merely objecting to the weight the sentencing judge assigned to his mitigation. Greenway was not objecting to the weight the court assigned to his mitigation, but rather the state court's refusal to give effect to this powerful mitigation that might have called for a sentence less than death. Thank you. Slow down. Thank you. On direct review of his case, the Arizona Supreme Court specifically recognized that Greenway had an IQ of 72. However, the court found that his low IQ was not significant enough to qualify as a mitigating circumstance. Counsel, was this issue fleshed out in your brief? I thought the issue regarding mitigating evidence was the argument that the courts required a causal nexus. That's correct, Your Honor. But I don't recall that you fleshed out in your brief that you were arguing that they failed to consider the mitigating evidence. Could you point me in your brief to where you made that argument? Yes, Your Honor. The argument begins on page 87 of the brief. And then the argument in regard to Tenard begins on page 92, where we talk about the federal standard. And then on page 97, we talk about the fact that Arizona has also applied a causal nexus test just like the one applied in Tenard and Smith v. Texas, which applies a threshold inquiry requiring a defendant to first demonstrate that his mitigation is causally linked to the crime before they consider it. Okay. So the Arizona Supreme Court said that, recognized that the defendant had an IQ of 72, which placed him in a borderline functioning category. That's correct. But said it wasn't significant enough to qualify as a mitigating factor. So tell us why that violated the Constitution. Because under Lockett and Woodson and Eddings and reiterated in other courts' opinions and the Supreme Court's opinions, they require that the sentencer must not be precluded from considering any relevant evidence that a defendant proffers for a sentence less than death. And, in fact, low IQ has been recognized as relevant, important, compelling mitigation in capital cases. But they considered it. So why isn't that enough to satisfy the Constitution? In fact, they considered it, didn't deem it to be sufficient to outweigh the aggravators, but considered it. Well, it was more than just insufficient to outweigh the aggravators. The Arizona Supreme Court, in its opinion, and I can direct you to where specifically, if you ‑‑ it's in the ERs at page 166, and it's also in Greenway's directive heel at 823 Pacific 2nd at 44, 43 and 44. And there the Arizona Supreme Court says that it's actually not a mitigating factor, not just that it's insufficient to outweigh an aggravator, but that it's not a mitigating factor because Greenway did not causally link it to his crimes. Well, it said it's not sufficiently substantial to call for leniency, which is another way of saying it doesn't outweigh the aggravators. Can you tell me again where they said that it was not causally linked to the crime? Yes, Judge Schroeder. It's at ‑‑ are you in ER 166? No. Okay. Okay. In the opinion at 823 Pacific 2nd at 44, and it's under ‑‑ there's mitigating circumstances and subsection B, defendant's low IQ. And it's under subpart B, the third paragraph down, where it begins, we cannot accept defendant's argument. Okay. Okay. And then in that paragraph, if you go down to the third sentence, it says, we agree with the trial court that under the facts of this case, defendant's IQ of 72, which places him in a borderline functioning category, was neither significant enough to qualify as a mitigating factor. Then it also says in addition to not being significant enough to qualify as a mitigating factor, it also is not sufficiently substantial to call for leniency. I think it's also important to note that the Court's analysis in this opinion compares Greenway's case to the case of Jimenez. In Jimenez, where the defendant did link his low IQ and mental health issues to the crime, the Court said that that was sufficient. And in this opinion, it says, you know, although they presented the same kinds of evidence because Jimenez causally linked it, then the Court considered it, whereas in Greenway's case he did not causally link it, and therefore it could not be considered. So our argument is that Mr. Greenway had a right to have the sentencing judge in this case consider this very important mitigation. The sentencing judge did not do that. And because of this, we believe that Mr. Greenway should be entitled to a new sentencing proceeding. The second claim I'd like to discuss is Mr. Greenway's claim of judicial bias. In his Federal habeas petition, Greenway alleged that his trial judge, Judge Scholl, had a close personal relationship with the late husband and father of the victims in this case. The district court erred when it denied evidentiary development and relief on this claim. Greenway was constitutionally entitled to a fair trial before a fair tribunal, but investigation during state post-conviction proceedings demonstrate that this did not happen. The trial judge in this case worked as a police officer prior to going to law school, and while he worked as a police officer, Scholl was partners with a man named Vince Peters, who was the late husband and father of the victims in this case. Greenway also learned through investigation that Scholl and Peters were very close friends who were often together. The state court, without holding an evidentiary hearing, denied this claim on the merits. In doing so, the state court reached a decision that was contrary to clearly established law. Scalia. Well, I don't know about that. Let's talk about that for just a second. It seems to me that clearly established Federal constitutional law as to the appearance of bias, not actual bias, but an appearance of bias, is pretty well set out in Toomey v. Ohio, which is cited by Caperton, right? So Toomey may have whiskers, but Caperton has revived it, right? So, and I see that as saying, for purposes of due process, we're not talking about Federal 455A and 455B judicial recusals. The judge has to have either, one, a direct pecuniary interest. Nothing about that here. Two, the judge must be embroiled in a running bitter controversy. That didn't occur. Three, the judge must act as part of the accusatory process. Is that what you're claiming? We are not, Your Honor. All right. So that doesn't apply. Okay. And four, in Caperton, where a stakeholder, a party, has spent $3 million in getting a judge put on the bench, and the judge goes his way. That didn't apply. So if we're under AEDPA, it seems to me that those are the four established bases for appearance of judicial bias in Supreme Court law. Now, under which of those do you claim to qualify the personal relationship to the extent that it existed between the judge and Mr. Peters, his former, perhaps, partner on the police department? How does that qualify under any of those four? Or are you claiming there's a new one that I've overlooked? Your Honor, we believe that in this particular circumstance we fall outside of AEDPA because the State court applied a harmless error analysis to this claim. When the State court denied this claim during PCR, it said that while it considered it to be newly discovered evidence that was not precluded from being presented. You fall outside of AEDPA? Because it said that the Arizona Supreme Court in reviewing the sentence had already approved of Judge Scholl's sentencing. Therefore, any evidence of judicial bias would not have had any effect on the outcome of the case. So they applied a harmless error analysis to a claim of judicial bias, which is actually a structural error. Does that mean that you did not raise the issue of judicial bias in the Arizona Supreme Court? It was actually considered newly discovered evidence during State post-conviction proceedings. It was not deemed as precluded. But the Court, under the State post-conviction statute, in addressing newly discovered evidence, not necessarily judicial bias in general. Anything that's newly discovered evidence can only be considered if it has and will have an effect on the outcome of the case. And in this case, the Court said that because the Arizona Supreme Court had already reviewed Judge Scholl's sentencing and approved of it. Which court said that? That was the Arizona Supreme Court. Which court? Excuse me, the State post-conviction court. State post-conviction. Yes, I'm sorry, Judge Schroeder. Okay. So what you're saying is that the PCR court, the trial court, said that since the Arizona Supreme Court had approved the sentencing, it had impliedly found that there could be no judicial bias? That's correct, Your Honor. Is where? Is that in the record? It is in the State PCR opinion. Let me find that for you. But my question is this. Did you raise the issue of judicial bias on direct appeal? It was not raised on direct appeal, Your Honor. Secondly, you raised it only on PCR? That's correct. And the answer that the trial court gave was, we won't consider that because that's already been determined by the Supreme Court's affirmance of the sentence. It was considered newly discovered evidence, so it was not considered precluded during State post-conviction proceedings. But under the State post-conviction statute for newly discovered evidence in general, it states that it will only consider newly discovered evidence if it has an effect on the outcome of the case. That cannot be applied to claims of structural error, because it's a harmless error analysis. Let me ask you this, because my understanding from this record, this was in the district court a long time. I'm not quite sure I understand what was going on. But as I understood the record, the district court gave defense the Petitioner's counsel an opportunity to try to find information about this claim. Isn't that correct? That was in State post-conviction court. That was in State court? That's correct. And counsel was diligent in investigating this claim. The State post-conviction judge who replaced Judge Shull, because Judge Shull was removed, found it to be a very important issue and encouraged counsel to investigate and requested that counsel report back. However, in the midst of that investigation, the Court issued its ruling finding that while it was newly discovered evidence and not precluded, because it would not have had an effect on the verdict of the district court. Well, when the district court got the claim, what did the district court do? Because my understanding was the district court did look at the facts that were averred and there were no affidavits or anything. The district court. And it said that this was a long time ago, et cetera, et cetera. I think the district court's final language was that counsel wasn't diligent in presenting the facts of this claim. Basically, counsel wasn't diligent in State court and, therefore, was denied opportunity for further evidentiary development and denied an evidentiary hearing. Well, I thought that he pointed out that the most that there was was that the men were police partners for a couple of months, 18 years before the trial, and that the partner who was the husband and father of the victims had been dead for a number of years. So there didn't so they didn't adequately show how this could have affected the trial. And what's why – can you comment on that? Why is that wrong? Yes, I would like to. I mean, counsel had just begun its investigation on this claim in State court. It never got to fully complete its investigation. They had the opportunity to speak to Judge Scholl on one occasion, but he admitted to knowing Vince Peters, but then referred PCR counsel to his attorney, did not want to discuss it further. So it's our position that counsel was diligent in State court in trying to develop this claim, but was cut short when the State PCR court issued its ruling, and the district court said that counsel was not diligent, did not present adequate facts to raise this issue, and did not give us the opportunity for further evidentiary development in district court either. Well, what kind of showing did you want to make? What kind of proffer? This has been around for a very long time. I understand, Your Honor. It's troubling. I think the issue is, and this would also, Judge Bea, go to your question about why is this not falling under the case of Crater. Well, first of all, we believe that we're not under a DPA because we believe the harmless error application was a violation that was contrary to Federal law. But in addition, when you look at the case of Caperton, the Court is really clear that there's a general standard that should be applicable. And the Court in Caperton has said that they reemphasized the central tenet of their judicial bias precedent, that due process requires recusal where the circumstances surrounding the case would offer a possible temptation to the average judge to lead him not to hold the balance nice, clear, and true. And in another place in that case, the Court says this basically comes down to whether an average judge in his position is likely to be neutral or whether there's a potential for bias that's unconstitutional. The Court in Caperton recognized – excuse me one minute. Well, following up on what Judge Schroeder said, is there any factual matter which wasn't before the district court as to judicial bias and which would bar the district court from making a determination that there was no structural error, even if they looked wrongly through the harmless error prism? I think, I mean, one possibility, Judge Beyer, and, you know, whether it would be likely, I really cannot say, but part of what the Court addressed in Caperton was the fact that demonstrating actual bias is very difficult because it requires a judge to review his own behavior and to be objective about it. Counsel, let me cut through this. I will give you – I'm just speaking for myself. I will give you the – assume with you that a judge who tries a case and who has a close, recent, personal relationship with the family of the victim, that that would create an appearance of impropriety, even if it doesn't get pigeon-holed into something that's in a previous case, because it seems obvious. But I don't see how this case even approaches that, and so I wish you'd help me with that. Well, Your Honor, I mean, we're tied to what investigation was done in State court. I mean, if they had been allowed to further pursue it and have an evidentiary in State court, possibly Judge Scholl would have been called to testify and would have had to have been honest about what his relationship was. I think it's important to kind of consider it through the lens also of there's a strong presumption that judges are honest and have integrity and that they're not going to be biased. If they say they're not going to be biased, I think that that is somewhat called into question because Judge Scholl was, in fact, indicted and convicted in Federal court for a claim regarding dishonesty. But are you saying that you were precluded from making any development of this claim in the district court? I'm not talking about a full, formal evidentiary hearing, but just putting anything that we were not granted any evidentiary development. No, I understand that, but couldn't you? I'm sorry, Judge Scholl. You can investigate independently without a court system. That's the point. The point is that you can investigate without engaging the court in the investigation. So when you say you didn't have an opportunity to investigate, that's a little difficult to accept because people investigate all the time without invoking the court's authority to do so. Judge Rawlinson, that's absolutely correct. And we did not represent Mr. Greenway during district court proceedings, but there was investigation. I believe that was continued by Carla Rye in prior counsel. I think this claim really comes down to trying to address the actual bias on the part of Judge Scholl, and without a court procedure compelling him to come in and talk about it, I'm not sure that even further conversations with Judge Scholl would reveal that because he wasn't willing to talk to us about it. There are lots of people who know whether there's a relationship, whether people are friends, or whether they're close friends. And there were people, I mean you can establish that quite easily. Thank you for raising that, Judge Schroeder. I did forget to mention that during the course of the investigation in state court by Carla Rye, who was the same counsel who took it to district court, they did talk to two people, one of whom Judge Scholl lived with when he left the police force and went to law school. And her son was also in the police force with Judge Scholl and Vince Peters. They were all very good friends. She talked about the fact that Judge Scholl and Vince Peters were constantly together. They had a very close relationship. They were always over there together for dinner. I mean, this was not just a relationship that ended when Judge Scholl went to law school and left the police force. I mean, it's our belief that it was a strong relationship. Judge Scholl really should have disclosed that at trial at least. I mean, if he felt that there was no problem, it should have been at least addressed in open court. And the fact that he didn't, I mean, we believe that we're entitled to actually fully vet out the issue. We think that Greenway has to do with it. Do you believe that that was less than 10 years earlier? I do believe. I mean, Vince Peters, I believe, died about 11 years ago, Your Honor. And so the relationship would have ended at his death. But it doesn't mean that it would have had no effect on the way Judge Scholl perceived the case. And I think the fact that it was a death penalty case where so much was at stake, I mean, if he did have bias, it could have infected the entire, you know, trial, sentencing, et cetera. Kagan. Do you want to go on to your IAC claims? Okay. The first aspect of this is in regard to ineffective assistance of trial in direct appeal counsel. The procedural rule that was invoked by the State court in Greenway's case was not adequate to bar Federal review because it was neither consistently applied nor well in Greenway's case. The district court should have allowed Greenway to present the merits of these claims. During state post-conviction proceedings, Greenway was represented by counsel that was so poor that he was required to move to represent himself. His attorney, Sarah Kaufman, filed an eight-page petition for post-conviction relief that was actually written by her investigator and not herself. Although Greenway had raised the claim of ineffective assistance of trial in direct conviction relief before counsel was appointed, Kaufman failed to include this in her eight-page petition. Greenway was later appointed different counsel during PCR proceedings, and that counsel was granted permission to file a motion for reconsideration, nunc pro tunc, reopening the proceedings. And counsel was also permitted to amend the petition that was filed by Kaufman to try to correct the problems that existed with that. The State court allowed Greenway to file an addendum to list other issues that they would include in the amendment. Greenway included claims of trial and direct appeal counsel in that. Despite this, rather than allowing amendment, the Court ruled that his claims were precluded by Rule 32.2a3. Sotomayor Because they could have been raised earlier. O'Connell Exactly. The problem with that did go ahead. Oh, I'm sorry, Judge Schroeder. Okay. I mean, the problem with that is that's finding that he should have filed them in a previous collateral proceeding. But the fact was is that they were in the first PCR proceeding. Kennedy There was no previous collateral proceeding. O'Connell That's correct. And so we believe that this rule is, therefore, inadequate to bar Greenway from seeking Federal review of this claim in district court. And that's exactly what happened. The State has shown no other instance where Rule 32.2a3 has been applied to bar claims of IAC that a Petitioner attempts to raise in a motion to amend during his first post-conviction proceeding. Sotomayor Had it been denied? Tell me what the – what is the procedural posture of it? Had it been denied, had it not? O'Connell It had. I mean, Sarah Kaufman filed her 8-page petition. At that point, Greenway sought new counsel. The Court did not address his request for counsel at all. She then missed further filing deadlines. She asserted to the Court, recognizing that she had not adequately briefed, requested to file a supplement, which she never did. She filed an untimely 3-page reply. Then the Court denied PCR. Greenway at that point moved to proceed pro se. It was granted. And then within a month, I believe, an attorney from the Arizona Capital Representation Project was appointed to the case, ultimately got permission from the Arizona Supreme Court to file a motion for reconsideration, no pro tunc, and then sought to amend as well. This case then went on for another two years during that same proceeding. They were investigating the issue of judicial bias. The motions were all pending before the Court. And then the Court ruled that rather than considering it the first proceeding, it was considering it a successive. Sotomayor Well, I thought that the Court did permit the – did consider the claim that couldn't have been brought earlier. Greenway Excuse me, Your Honor. Could you repeat that? Sotomayor I thought there was one claim that the Court did consider because it said it couldn't have been brought earlier. Greenway That's correct, because it was based on newly discovered evidence, whereas this was not based on newly discovered evidence. Sotomayor Okay. Greenway Okay. I see that my time is getting close, and I request that I can reserve my remaining time for rebuttal. Sotomayor Thank you. Jeff Zick May it please the Court, my name is Jeff Zick. I'm an assistant attorney general in the Arizona Attorney General's Office, and I represent the athlete in this matter. Sotomayor You're going to have to slow down, too. Jeff Zick Okay. I will. I would like to start with the last issue that was discussed, the preclusion issue. And I recognize that this is a very – well, what I deem to be a very complex procedural case, but I'd like to boil it down as simply as possible. The PCR proceeding that counsel spoke of was actually closed. The trial court had summarily denied the petition for post-conviction relief that was filed. The time limits for filing a motion for reconsideration and for a petition for review to the Arizona Supreme Court had also run. The cases cited by Appellant in his argument that Rule 32.283, the preclusion bar, Arizona's preclusion rule, is not adequate, are simply procedurally different than this particular case. This case is a classic preclusion case. When the case eventually went up after the summary denial of the petition for post-conviction relief and the time had run for the petition for review, when the Arizona Supreme Court took discretionary review on a special action petition and declined jurisdiction in lieu of allowing Greenway to file a motion for reconsideration, that simply kept open the appellate review process of the summary denial, because it went back as a motion for reconsideration. It wasn't saying, it wasn't granting permission to Greenway to file a petition for reconsideration in the Arizona Supreme Court. It was saying you can file a motion for reconsideration in the trial court. Now, you can't file a motion for reconsideration in a case that is final already in the trial court, unless the Supreme Court of Arizona finds that it isn't final, that it's still going on. That that process hasn't finished. But the process did finish, because when you look at rules of the Supreme Court doing, just getting this matter off its calendar by saying, by granting something that couldn't be done? No. What the Arizona Supreme Court was doing was taking discretionary review of Greenway's Under the special action. Under the special action rules. Now, what was it doing when it said you can now file a petition for reconsideration, other than saying the original PCR is not over and done with, you can file a petition for reconsideration of the judge's findings there? What the Arizona Supreme Court was doing was allowing Greenway to file a motion for reconsideration in the trial court. Right. What that does is it allows him to keep open the appellate review process of the summary denial. In other words, a motion for reconsideration doesn't allow the trial court to do anything as a trial court. No. What the motion for reconsideration allows a trial court to do is reconsider its summary denial. When it came back to State court after the special action, what Greenway did was two things. He raised a new claim of newly discovered evidence of judicial bias, the judicial bias claim. And he also raised other new claims, which are wholly inappropriate on motions for reconsideration. You can't raise new claims. Okay? And Rule 32.9 of the Arizona Rules of Criminal Procedure allow for the new claims were not precluded under 32.2 by a prior collateral proceeding. They were not precluded because they hadn't been considered. They were precluded because when you look at when you look at there was a let me start Maybe I'm not being clear. When there was a petition for post-conviction relief that was filed, it was summarily denied. That is a final decision of the trial court. Now, when they went, okay, then there was this petition for special action to the Arizona Supreme Court. And what was the argument that was made there? The argument that was made in the petition for special action was that he wanted to file a motion for rehearing or reconsideration of the trial court's decision. And I believe in that petition What did he want the Supreme Court to do? To exercise its discretionary review and send it back for that reconsideration or rehearing. And that's what the Supreme Court did. That's what the Supreme Court did. But that didn't reopen the petition, the PCR process. And then when you see what the trial court did, I know it's complicated. I'm not making it very clear. That was the initial petition. What the trial court did once it came back on the motion for reconsideration and dealt with two years of investigation of the judicial bias claim and looked at all of the claims that in the addenda that Greenway wanted to amend that already under the preclusion rule because they could have been raised in that petition that was already summarily denied. Let's talk about two different things. Point two is preclusion. Point three is waiver. And they talked about preclusion because the issue had been decided. Those issues had not been decided. Judicial bias hadn't been decided. And the eight or nine or two or three or four or five or six or seven or eight or nine When I say preclusion, pardon me, can I speak without being interrupted? I'm sorry. All right. And the pretrial and trial IAC claims had not been presented to the trial court and the PCR, and they were presented by the motion to amend. So don't unless you have a different view than I do of the word preclusion by determination, neither the judicial bias claim nor the pretrial IAC, pretrial and trial IACs had been determined by that court because they had not been brought and they were indeed laid out in the motion to amend. So it might be that the trial court could say, well, you could have brought all those things because you haven't shown good cause for amending your petition because those were all known to you, and under point three, 32.2.3, they are waived. But that's not what happened. They said they are precluded. And the question is, was there a well-established and consistently applied rule that this is a type of preclusion? Now, address yourself to that. And I think there is a — there is a — Cases show that you can say that matters not brought were determined and precluded. No. I think when I say preclusion rule, that is the typical, I guess, moniker that people put on Rule 32.2a3. Let me — let me try to put it a little different. My understanding is that that rule is very strictly enforced in Arizona, and that if you have a post-conviction petition, you have to bring everything that you could have brought there, or else you can't bring it in a second one. As I understand your argument, however, you are treating this motion to amend as if it were a second petition, and that the first one was over. And the problem that we're having is that as this little scenario spun out, the first one never really got over, because it went to the Supreme Court to — to permit more things to be added. And the Supreme Court said, you have to reconsider and — and look at this. So I guess that's — if there had been, as in the cases that we've recognized, there had been a clear dismissal, and then an effort two years later to file a second petition, it would be clearly be precluded, barred, whatever. But that doesn't appear to be what happened here. Well, I — and I think our argument is that is what happened here. Even though it went to the Arizona Supreme Court on discretionary review, the only thing the Arizona Supreme Court did was send it back for reconsideration. Of what had been presented already. Right. And then when the new claims were brought up in the motion to amend or the addenda, the trial court treated that as a successive petition. And that's — and that's how the preclusion rule or waiver rule of Rule 32.283 was invoked. Well, I guess I — then when the — when the Petitioner went to the Supreme Court, it didn't brief or tell the Supreme Court what additional claims it wanted to be considered? I believe that the Petitioner did do that to some extent. And — but what the Arizona Supreme Court did was send it back for reconsideration on something that had already been done because the time limits had already run on motions for reconsideration and petition for review. But the Supreme Court of Arizona didn't say we're remanding for reconsideration but not to allow any new claims, such as the Petitioner here has brought forward regarding IAC in the pretrial and trial case. They didn't say that. They just said you can apply for, and I think they said, the rehearing, right? I don't know if there's any difference between rehearing and reconsideration. And rehearing, and they had an unlimited mandate regarding rehearing. I think it is a limited mandate because when you look at the rule, Rule 32. And do we have any cases that you've cited that say that when, under discretionary review, rehearing is allowed, that means only those matters already presented and not to permit any amendment? I don't have — I didn't cite any cases in the brief. What I can tell you is that Rule 32.9 is very specific about motions for reconsideration and what they entail. There's also a 1991 Arizona court of appeals case called State v. Bortz that talks about motions for reconsideration and how they are strictly — the time limits are enforced in order to — Sotomayor, you see, but I — that — I understand a lot of that, but I don't understand what the Supreme Court was doing when it took the special action and told you go back and just essentially telling that the Supreme Court doesn't take special actions in order to say you've done everything right. It doesn't send it back because it thought you'd done everything right. I find it difficult to understand what they were doing if they weren't saying look at these claims. The difficulty lies in the fact that it's a simple order that basically just says in lieu of filing a motion for reconsideration. But when you look at Rule 32.9 and what a rule for reconsideration is, it's not — it's not implied in the rule. It's not stated in the rule that you are allowed to add new claims. And that's — that's very clear in Arizona law. Motions for reconsiderations are not the time to raise new claims. So I guess you can take from that language that it's only sending it back for reconsideration of what had been denied. Well, I don't know that we know that. But that's what I'm — from the language of the order, that's — and the rules that Arizona — the Rule 32.9, that's — that's how that should be read. And that's our argument. In the trial court, in the PCR court, Greenway moved for a reconsideration of the matters he'd already submitted, the IAC and sentencing. Plus, he moved to amend his petition to add pretrial and trial IAC claims. So both of those matters were before the trial court. What you're saying is that the Supreme Court, when it said you can make a motion for rehearing, meant to say you can only have a rehearing on the — on one of those, which is the claims you've already brought. You can't have a rehearing on the amended claims which have not been heard yet. That — that's what a motion for reconsideration is. But you can — you can tell from what the trial court did at that point, after that motion for reconsideration be filed, when Greenway filed his motion to amend the petition with the addenda and additional issues, it treated that as a successive petition. Well, he filed a motion to — it wasn't to try to amend it? That's correct. Yeah. But the trial court treated it as a successive petition by precluding those — Yeah, well, that's the problem, whether that's really what it was supposed to be doing. And our argument is under the rules — Whether the — whether that's the — I mean, there doesn't seem to be any clear — in this case, any clear bar the way that there would be if there had been a straight second petition. Isn't there a rule in post-conviction remedy in Arizona that amendments should be liberally allowed? There is Rule 32.6 that allows for amendments and gives the trial court's discretion to do so, but that — that rule isn't part of this case. It was never discussed. It was never part of the argument in this case. Well, he did ask to amend. He did ask to amend. But at that point, the prior proceeding — I know this gets very complex, and I feel like I'm repeating myself, but the prior proceeding had been done because it had been summarily denied and all the time was — All he could do was to ask to reconsider the prior proceeding. Right. And then the new claims were treated as — And at the same time, they did consider the claim that could not have been brought earlier, the trial court did. The same claim, yes. Did consider the claim, I think it was the bias claim, that had not — could not have been brought earlier. Well, that — that was a — that's a little different claim because by that time, Greenway had discovered. Yeah. So it was newly discovered and treated differently. Right. But I suppose the best thing you could say on your side, and I hate to make an argument for you, but that the Arizona Supreme Court, in its order allowing rehearing, did not say that the trial court, the PCR court, had abused its discretion in not allowing the amendment of the petition. That's correct. Eventually, when it went back to the Arizona Supreme Court, that's — that is correct. If you have no further questions about the preclusion, I'd like to talk a little bit about the Tarnard issue. The say again? Tarnard issue, which I — it's difficult to say Tarnard issue because that came from a unique Texas system that Arizona doesn't have. But the trial court in this case stated, on the record, that it had considered all of the proffered mitigation that Greenway presented. In addition, the Arizona Supreme Court also considered the mitigation that had been presented and reviewed the record independently to determine what mitigation was presented. Don't you think that the — that the State supreme court decision is capable of being read to be applying a nexus requirement, that the — that the low IQ had to have something to do with the commission of the crime? I think that is a function of the analysis that the Arizona Supreme Court did when it considered the — the mitigation evidence. The problem that has arisen in these types of cases with this particular issue is when the Arizona Supreme Court actually says there's no connection or no causal nexus between the mitigation and the crime, this court, in other cases, has found that that is an unconstitutional causal nexus test, similar to the Tarnard versus Dereckian-Smith versus Texas. What the Arizona Supreme Court has done when it has gone through that test, it's part of their weighing analysis of the mitigation. It's clear the Eighth Amendment requires that the sentencer consider all mitigation. That — going back to Lockett, and after Lockett came out, weeks after Lockett came out, the Arizona Supreme Court found Arizona's statute at the time unconstitutional. It changed its statute because Arizona's statute only allowed for, I think, three anything else. Since that change, and since Eddings has come out, Arizona has always provided that the defendant be allowed to present all mitigation, any relevant mitigation, and that has — and it — to be considered by the sentencer. When it was judge sentencing in Arizona, judges would do special verdicts and they would write down their analysis of how they weighed the mitigation. And part of that weighing came from the statutory mitigating factor under, I think it was G-1, the mental health mitigating factor. And it would weigh it in saying whether it was particularly relevant, whether it had any connection to or nexus to what actually happened in this case. That doesn't mean they didn't consider it. They just put down their analysis. And the difference now is when you have jury sentencing, you don't know any analysis from what the jurors are saying. You know, it's individualized sentencing up to any particular juror. They can consider the mitigation. As long as it goes before that jury or the sentencer, then it — then the Eighth Amendment has been complied with. It's somewhat similar in this case — or not in this case, but other cases where causal connection or causal nexus has been mentioned. It is being considered. There is no Eighth Amendment violation in that respect. And it simply goes to the weight. But in this case, there's no — there's no affirmative language from the Arizona Supreme Court saying that they look at this because it wasn't causally connected. They simply considered the mitigation evidence and analyzed it as to what weight to give it. So there is no Tenard violation in this case. In this case, it's somewhat similar to Shad, where there was no — no affirmation by the court that it went through a causal connection test.  GOTTLIEB It's not exactly the same. MR. CLEMENT Not exactly the same as Shad. But, I mean, it's somewhat similar to Shad in that there was no affirmation by the court saying it went through a causal connection test. MS. GOTTLIEB I'm just a little puzzled by what it was saying about Jimenez in the contrast and say, well, their — his mental problems actually caused him to commit the crime, whereas that didn't happen here. That comes a little closer to being a nexus Tenard violation to me than Shad.  CLEMENT Well, I think in that respect, I think what the Arizona Supreme Court was trying to articulate was that what Greenway had presented was not particularly weighty mitigation evidence. When you looked at a case like Jimenez, who actually presented evidence and substantial evidence of having hallucinations or delusional thoughts that compelled him to commit the crime, I think that's particularly weighty. And I believe that's what the Arizona Supreme Court was doing in this case. MS. GOTTLIEB So, counsel, why shouldn't the district court have provided an evidentiary hearing on the judicial bias claim? MR. CLEMENT Well, when the case was in state court, Greenway had over two years to develop this claim and to litigate the claim. When it came to the district court, that claim had been denied by the Arizona Supreme Court on a petition for review. There was no evidence indicating that it was a colorable claim. You had an individual that was claimed to be a partner by an affidavit from a juror. The only other evidence was a human resources document saying that Vince Peters and Judge Shull worked together for – that they could have been together for two and a half months in 1971, which was 18 years prior to the trial. Judge – or Vince Peters had done – MS. GOTTLIEB What about the evidence that counsel discussed regarding their being close friends even after their relationship on the force ended? MR. CLEMENT It was – it was innocuous evidence. It was given at a status conference where Greenway's counsel was saying, well, we're trying to find this.  We're –  GOTTLIEB This person said this. MR. CLEMENT This person said, you know, and we're trying to see if that – MS. GOTTLIEB No declaration, no affidavit. MR. CLEMENT Correct. There was never an affidavit filed. There were never any declarations filed. There was never any proffered evidence other than those hearsay statements by counsel at a status conference. Even in district court, there was nothing proffered to show that there was anything but an innocuous connection between Vince Peters and Judge Shull. Vince Peters had died 11 years prior to this trial. So there's – there's no demonstration that there was any type of recent relationship between Judge Shull and Vince Peters. And – and more importantly, there was never any evidence to indicate that Judge Shull knew Lily Champagne, the adult victim, and – or Vince Peters' daughter, Mindy Peters. So I – you know, I think the district court was correct in not allowing evidentiary development. KENNEDY So it boils down to you saying he had two years in the PCR to develop this evidence. He didn't do so, and he didn't show anything in the district court that would justify the holding of an evidentiary hearing. CLEMENT That's correct. If the Court doesn't have any further questions, I would rely on everything else in my brief. MS. GOTTLIEB Thank you again. Thank you. MS. GOTTLIEB In regard to the judicial – I'm sorry, I'm so short. I have trouble reaching this. Okay. Can you hear me? Are you going to judicial bias? MS. GOTTLIEB Yes. First of all, there was an affidavit filed supporting our claim on judicial bias. It's at ER 486. Counsel's investigation included interviewing jurors from the trial, and – MS. GOTTLIEB It's an affidavit from counsel? MS. GOTTLIEB It's an affidavit from someone who served as an alternate juror. MS. GOTTLIEB Right. But opposing counsel was making the distinction that the evidence that you talked about regarding the close relationship following the employment at the department was never put in the form of an affidavit or a declaration or anything tangible. It was rather just a representation made by counsel at a status conference. MS. GOTTLIEB Okay. There was an affidavit, I believe, presented. It's from December 16th of 1994. And it's from the alternate juror, Calvin Benefit. MS. GOTTLIEB That's the one that says that the judge made these comments.  GOTTLIEB Yes. MS. GOTTLIEB And then in regard to why other affidavits and further evidence wasn't entered into the record, during this time, Judge Donfeld felt – thought that this was a very important issue and encouraged counsel to pursue it. In fact, just a couple weeks prior to issuing its ruling, it encouraged counsel to keep going out, said, yes, this could be a big problem, we need to further investigate this. At the same time, the State was pushing that, no, no, no, you can't consider this, this is precluded, this is a successor petition. And in fact, in the transcript during PCR of August 19th, 1996, there's a specific discussion of this where the judge is concerned because he thinks that it's a serious issue. The State is pushing for the judge not to consider it, saying this is a successor petition, this is precluded, you can't consider this. And Carla Ryan giving the judge information about the investigation so far. During this hearing, the judge also said, well, well, State, if you're saying it's precluded, I'm not sure I'm going to find that it's precluded, but I am going to alert the higher court that I believe this is an important issue in my order. And in fact, in the minute entry of September 9th, 1996, when it held that this was newly discovered evidence but that it wouldn't have an effect on the verdict, the court in there said that he felt that it was an important claim. This Court has not heard this issue. However, it appears from the documentation that avowals of defense counsel that there is some indication that Judge Shull may have had some relationship with Vince Peters and went on to say that it wasn't precluded. So this was an issue that was important. We believe it was not precluded. There was every indication during this period of time that proceedings were ongoing. At one point, the State sought a warrant and the Arizona Supreme Court said no. Post-conviction proceedings are still continuing. In addition to that, I just wanted to emphasize that the State has not shown, as to the issue of trial and direct appeal counsel, the State has not shown that was consistently applied to this kind of situation. And as to that issue, I just wanted to emphasize that we're requesting further briefing in district court on this issue and evidentiary development. If we agree with you on that last point. That's correct, Your Honor. What remedy do you seek? A remand to the district court to consider the IAC claims that were in the petition for amendment of, pardon me, the amended petition? That's correct, Your Honor. And we believe we should also have the opportunity for further evidentiary development just because counsel's. Trial court. You want to go back to the Arizona court? No. In district court. I didn't understand what you just said about you're going to ask for further briefing in the district court on what? On the issue. I'm sorry, Judge Schroeder. On the issues of ineffective assistance of trial and direct appeal counsel. Okay. On the claims. Okay. Those are the claims that are involved in the issue that's delivered. Yes. And that actually also goes to the claim we didn't discuss today, which is ineffective assistance of sentencing counsel. We would like the opportunity for briefing on the merits of all those claims. Thank you. Thank you, Your Honor. The case just argued is submitted for decision. That concludes the Court's calendar for this morning, and the Court stands adjourned. Thank you.
judges: Schroeder, Rawlinson, Bea